UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TYSHAWN BALDWIN, ROBERT THOMPSON, and CHARLES MURRAY,

                    Plaintiffs,

-against-

CITY OF NEW YORK, Lt. RYAN GILLIS, Sgt. NICKO SINGKUAN, P.O. MICHAEL ZWEIFLER, P.O. ANTONIO ZORRILLA, Sgt. JOSEPH KOSEK, P.O. THOMAS BAY, P.O. ETHAN COOLEY, P.O. ARNOLD CHOW, P.O. CLEEFORD FRANKLIN, and JOHN and JANE DOE 1 through 10, individually (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                    Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' REPLY LOCAL RULE 56.1 STATEMENT IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS'**

18 CV 7366 (NG) (SMG)

A. **Relevant Factual Background**

    Defendants' Rule 56.1 Paragraph 1:
**On December 26, 2018, plaintiffs Tyshawn Baldwin, Charles Murray, and Robert Thompson filed their Complaint in this case against the City of New York and John Doe 1-10. Dkt. No. 1.**

    Plaintiffs' Response: Admitted.

    Defendants' Rule 56.1 Paragraph 2:
**On April 1, 2019, defendant City filed an Answer and an Amended Answer to the Complaint. Dkt. Nos. 9 and 10.**

    Plaintiffs' Response: Admitted.

    Defendants' Rule 56.1 Paragraph 3:
**On May 21, 2019, plaintiffs filed an Amended Complaint in this case. Dkt. No. 13 and Exhibit A.**

    Plaintiffs' Response: Admitted.

    Defendants' Rule 56.1 Paragraph 4:
**The Amended Complaint added, (sic) as defendants Ryan Gillis, Nicko Singkuan, Michael Zweifler, Antonion Zorilla, Joseph Kosek, Thomas**

**Bay, Ethan Cooley, Arnold Chow and Cleeford Franklin. Dkt. No. 13 and Exhibit A, passim.**

Plaintiffs' Response: Admitted

Defendants' Rule 56.1 Paragraph 5:
**The Amended Complaint alleges claims under the Fourth, Fifth and Fourteenth Amendments for false arrest, excessive force, failure to intervene, malicious prosecution, and denial of a right to fair trial against the individual defendants. Dkt. No. 13 and Exhibit A, passim.**

Plaintiffs' Response: Admitted in part, denied in part.

As set forth in defendants' Exhibit A, plaintiffs asserted claims against the defendants under 42 USC §1983 for (i) false arrest, (ii) unreasonable search, (iii) failing to interevene, (iv) malicious prosecution, and (v) denial of the right to a fair trial. (Defs. Exh. A at pp. 4-7).

Defendants' Rule 56.1 Paragraph 6:
**On June 4, 2019 defendant the City answered the Amended Complaint. On August 9, 2019 defendants Ryan Gillis, Nicko Singkuan, Michael Zweifler, Antonion Zorilla, Joseph Kosek, Thomas Bay, Ethan Cooley, Arnold Chow and Cleeford Franklin answered the Amended Complaint. Dkt. Nos. 16 and 19.**

Plaintiffs' Response: Admitted.

Defendants' Rule 56.1 Paragraph 7:
**Plaintiffs voluntarily dismissed all claims against defendants the City of New York, Singkuan, Cooley, Chow, and Franklin. See Dkt. Entry. dated July 28, 2021.**

Plaintiffs' Response: Admitted.

B.   **The Plaintiffs are Arrested**

Defendants' Rule 56.1 Paragraph 8:
**On June 23, 2018 plaintiffs Baldwin, Murray and Thompson were arrested for suspected loitering and gambling in public outside of 140A Lexington Avenue in Brooklyn. Ex. B (Murray Dep). at 41:17-19.**

Plaintiffs' Response: Admitted in part, denied in part.

Admitted that plaintiffs Baldwin, Murray, and Thompson were arrested on June 23, 2018, in Brooklyn, New York, on Lexington Avenue between Bedford and Franklin Avenues (hereinafter the "Arrest location"). (See deposition transcript of

Robert Thompson ["Thompson Dep."], attached as to the November 29, 2021 Declaration of Michael Lumer ["Lumer Dec."] as Exhibit 1, at 32:3-16).

Admitted that Thompson was arrested for Promoting Gambling in the 2d Degree in violation of NY Penal Law §225.05 and Loitering for the Purpose of Gambling in violation of NY Penal Law §240.35(02). (NYPD Arrest Report for Robert Thompson attached to the Lumer Dec. as Exhibit 2 at p.1).

Admitted that Baldwin was arrested for Promoting Gambling in the 2d Degree in violation of NY Penal Law §225.05, Loitering for the Purpose of Gambling in violation of NY Penal Law §240.35(02), Criminal Possession of Marijuana in violation of NY Penal Law §221.10(01), and Public Consummation of Alcohol in violation of AC §10-125. (NYPD Arrest Report for Tyshawn Baldwin attached to the Lumer Dec. as Exhibit 3 at p.1).

Admitted that Murray was arrested for Loitering for the Purpose of Gambling in the 2d Degree in violation of NY Penal Law §240.35 as set out in Criminal Summons 4444065724 issued by defendant Zweifler. (Def. Exh. C at D 486).

Denied that any of the plaintiffs were arrested for "suspected" loitering and gambling. Defendants' insertion of the word "suspected" is not supported by the arrest paperwork they created, in which they claim that plaintiffs were arrested for playing dice for money. ((Exh. 2 at 1; Exh. 3 at 1; Defs. Exh. C at D 005). Moreover, there is no crime of "suspected loitering" or "suspected gambling" nor does this qualifying term appear anywhere in the penal code cited by defendants.

Defendants' Rule 56.1 Paragraph 9:
**After being arrested, Murray was placed in a patrol car and transported to the 79th Precinct. Ex. B (Murray Dep.) at 42:5-18.**

Plaintiffs' Response: Admitted.

C. **Plaintiff Murray Is Issued a Summons Which Is Ultimately Dismissed for Legal Insufficiency**

Defendants' Rule 56.1 Paragraph 10:
**Murray was charged with illegal loitering and gambling, PL § 240.35(2) and released with a C-summons. Ex. B (Murray Dep.) at 46:9-24 and 50:6-51:5 and Ex. C (Summons).**

Plaintiffs' Response: Admitted that Murray was arrested for Loitering for the Purpose of Gambling in violation of NY Penal Law §240.35(02) as set out in Criminal Summons 4444065724 issued by defendant Zweifler. (Def. Exh. C at D

3

486).

Defendants' Rule 56.1 Paragraph 11:
**The summons was signed by Officer Zweifler. Ex. C (Summons) D000486.**

Plaintiffs' Response: Admitted.

Defendants' Rule 56.1 Paragraph 12:
**Murray was in custody for between one to two hours before he was released. Ex. B (Murray Dep.) at 48:20-22.**

Plaintiffs' Response: Denied. Murray's recollection at his deposition, as cited by defendants, was limited to his memory of the length of time he was at the police precinct, which he estimated to be between one to two hours.

The first few minutes of Zweifler's body cam footage shows the plaintiffs were detained at or prior to 5:29 pm. (Zweifler BWC footage [file number 1 of 2] attached to the Lumer Dec. as Exhibit 4). According to the precinct's command log, Murray's property was returned to him at 11:05 pm, establishing that Murray was detained or otherwise in defendants' custody for over five hours. (See the Command Log attached as Exhibit 5 (redactions by defendants)).

<u>Disputed. The Command Log, Plaintiffs' Exhibit 5 as cited by plaintiff reads that Murray was arrested at 17:40 and "Released 1855 hours 6/23/18". This amounts to an hour and fifteen minutes, or, according to Zweifler's BWC footage, Plaintiffs' Exhibit 4, an hour and twenty minutes. Either is consistent with Murray's testimony that he was in custody for an hour or two as cited in Defendants' 56.1 ¶8. Murray was not in custody for 5 hours.</u>

Defendants' Rule 56.1 Paragraph 13:
**Murray made a single court appearance which lasted approximately 5 minutes. Ex. B (Murray Dep.) at 50:6-51:5.**

Plaintiffs' Response: Admitted in part, denied in part.

Admitted that Murray's summons was dismissed at his first court appearance.

Denied that the entire court appearance lasted five minutes. Murray's actual testimony was:

> Yes, as soon as I got up there, she read and looked at it and said the officer didn't do something correct and she dismissed it, and I walked out. I was there for about five-ten minutes. I was there longer, but by the time I spoke to the judge, it was five minutes. She did it quick.

5

(Def. Exh. B. At 50:6-11). This statement establishes that Murray was standing for about five to ten minutes while his case was before the court. The record is silent as to how long he was in court until his case was called. <u>Disputed. Plaintiff's testimony does not dispute Defendant's ¶13. There is no evidence that Murray spent more than approximately five minutes in court.</u>

Defendants' Rule 56.1 Paragraph 14:
**The charge against Murray was dismissed for legal insufficiency after that single court appearance. Ex. B (Murray Dep.) at 50:6-51:5 and Ex. D** (Certificate of Disposition) D000487.

Plaintiffs' Response: Admitted.

**Plaintiffs' Statement of Material**
**<u>Facts Pursuant to Local Rule 56.1</u>**

A.  **Relevant Factual Background: the Arrests**

8.  **Plaintiffs' 56.1 at paragraph "15": Plaintiff Tyshawn Baldwin was present at the Arrest location on Lexington Avenue between Bedford and Franklin Avenues in Brooklyn, New York, during the day on June 23, 2018. (See deposition transcript of Tyshawn Baldwin ["Baldwin Dep."], attached as Exhibit 6 to the Lumer Dec. at 25:22-26:1).**

    <u>Defendants' Response: Disputed to the extent that the cited transcript does not support the statement set forth above and only supports that Baldwin testified at his deposition that he was in the "Lexington area" for hours before the officers arrived.</u>

9.  **Plaintiffs' 56.1 at paragraph "16": Plaintiff Charles Murray drove to the Arrest location on the date of the arrest in his black 2016 Dodge Charger. (See deposition transcript of Charles Murray ["Murray Dep."], attached as Exhibit 7 to the Lumer Dec. at 28:3-14).**

    <u>Defendants' response: Admitted.</u>

10. **Plaintiffs' 56.1 at paragraph "17": Plaintiffs Baldwin, Thompson, and Murray met at the Arrest location prior to the arrival of the NYPD. (Exh. 7, Murray Dep., at 27:20-28:19).**

    <u>Defendants' response: Admitted.</u>

11. **Plaintiffs' 56.1 at paragraph "18": Other people were present, including Kashaun Richardson. (Exh. 1, Thompson Dep., at 37:14-19; Exh. 6, Baldwin Dep., at 24:5-10).**

6

Defendants' response: Admitted.

12. **Plaintiffs' 56.1 at paragraph "19": Plaintiffs were not engaged in any criminal conduct and there was no legal basis to seize or arrest the plaintiffs. (Def. Exh. A at ¶¶ 12-16).**

    Defendants' response: Disputed. See Plaintiff's Exhibits 2, 3, 17.

13. **Plaintiffs' 56.1 at paragraph "20": Defendant Kosek was alone in his personal vehicle on June 23, 2018, when he drove down Lexington Avenue and observed men gambling with dice. (See deposition transcript of Joseph Kosek ["Kosek Dep."], attached as Exhibit 8 to the Lumer Dec. at 18:11-16, 20:11-21:11, 28:3-14).**

    Defendants' response: Admitted.

14. **Plaintiffs' 56.1 at paragraph "21": Kosek claims that as he drove along Lexington Avenue, he was able to see four males engaged in a game of dice in which one person rolled dice and that he could see others exchanging money based on the roll of the dice. (Exh. 8, Kosek Dep., at 22:9-24.4, 26:9-19).**

    Defendants' response: Admitted.

15. **Plaintiffs' 56.1 at paragraph "22": Kosek telephoned defendant Lt. Ryan Gillis to communicate what he claims to have seen. (Exh. 8, Kosek Dep., at 25:4-19).**

    Defendants' response: Disputed to the extent that the cited testimony does not support *what* Kosek communicated to Gillis when he called him; admitted to the extent that Kosek called Gillis.

16. **Plaintiffs' 56.1 at paragraph "23": Kosek drove an unspecified distance down the block before pulling over and climbing into the rear of his vehicle to continue observing the men. (Exh. 8, Kosek Dep., at 29:3-25).**

Defendants' response: Admitted.

17. **Plaintiffs' 56.1 at paragraph "24": Gillis, and defendants Michael Zweifler and Antonio Zorrilla, drove together to the location. (See deposition transcript of Ryan Gillis ["Gillis Dep."], attached as Exhibit 9 to the Lumer Dec. at 12:12-13:15; deposition transcript of Michael Zweifler ["Zweifler Dep."], attached as Exhibit 10 to the Lumer Dec. at 8:11-9:7; deposition transcript of Antonio Zorrilla ["Zorrilla Dep."], attached as Exhibit 11 to the Lumer Dec. at 9:6-10:15).**

7

Defendants' response: Admitted.

18. **Plaintiffs' 56.1 at paragraph "25": When they arrived at the location, defendants Gillis, Zweifler, and Zorrilla found three men leaning against a car. (Exh. 9, Gillis Dep., at 21:4-12; Exh. 10, Zweifler Dep., at 10:24-11:14).**

    Defendants' response: Admitted.

19. **Plaintiffs' 56.1 at paragraph "26": None of these men, nor anybody else, was rolling dice or gambling. (Exh. 9, Gillis Dep., at 24:18-23; Exh. 10, Zweifler Dep., at 10:24-11:8; Exh. 11, Zorrilla Dep., at 13:15-14:8).**

    Defendants' response:
    Admitted only to the extent that the testimony cited supports the following: Gillis testified that when they got to the scene, he did not see any dice or any money on the ground; Zweifler testified that when he arrived on scene, he did not see the men doing anything illegal at that time; Zorrilla testified that when he arrived at the location, he did not observe gambling, or any money or dice on the ground.

20. **Plaintiffs' 56.1 at paragraph "27": Gillis was in telephone contact with Kosek who confirmed that these individuals were three of the men he claimed to have seen gambling, at which time the three men were placed under arrest. (Exh. 9, Gillis Dep., at 29:18-31:2; Exh. 10, Zweifler Dep., at 13:10-14).**

    Defendants' response: Admitted only to the extent that the cited testimony supports that Gillis testified that Kosek confirmed that the three individuals at the scene were the ones Kosek saw gambling and that Gillis instructed Zweifler/the officers to arrest them.

21. **Plaintiffs' 56.1 at paragraph "28": Shortly thereafter Thompson, who had been filming the arrest of Baldwin, Murray, and Richardson, was also arrested. (Exh. 1, Thompson Dep., at 46:2-23, 48:21-49:24).**

    Defendants' response: Admitted only to the extent that the testimony cited so states.

22. **Plaintiffs' 56.1 at paragraph "29": The plaintiffs were transported to the 79 precinct station house for processing. (Exh. 9, Gillis Dep., at 50:15-21).**

    Defendants' response: Disputed; the cited testimony does not support the statement.

**B.**   The Arrest Paperwork and Communications with the KCDA

23.   **Plaintiffs' 56.1 at paragraph "30": After returning to the station house Zweifler drafted arrest paperwork. (Exh. 10, Zweifler Dep., at 33:22-34:7).**

Defendants' response: Admitted.

24.   **Plaintiffs' 56.1 at paragraph "31": The arrest paperwork included a complaint report. (See Complaint Report attached to the Lumer Dec. as Exhibit 12).**

Defendants' response: Disputed. The document cited herein does not support the statement that the arrest paperwork includes a complaint report.

25.   **Plaintiffs' 56.1 at paragraph "32": The complaint report acknowledged that the dice were not recovered. (Exh. 12, Complaint Report, at 1).**

Defendants' response: Admitted, except that the information cited is located at page 2.

26.   **Plaintiffs' 56.1 at paragraph "33": The complaint report does not make any mention of Thompson possessing or discarding or hiding the dice, or otherwise tampering with evidence. (Exh. 12, Complaint Report).**

Defendants' response: Admitted.

27.   **Plaintiffs' 56.1 at paragraph "34": Zweifler also drafted an arrest report for Thompson. (See Exh. 2, Thompson Arrest Report).**

Defendants' response: Admitted to the extent that the document cited states that Police Officer Michael Zweifler entered the referenced report.

28.   **Plaintiffs' 56.1 at paragraph "35": Zweifler does not make any mention of Thompson taking any steps or engaging in any conduct to possess, discard, or hide the dice, or otherwise tamper with evidence anywhere in the arrest report. (Exh. 2, Thompson Arrest Report).**

Defendants' response: Disputed, the cited document specifically states that Thompson "was engaging in dice games where money was exchanged and profiting based on the outcome of the game on public sidewalk." See Exh. 2 at p. 1.

29.   **Plaintiffs' 56.1 at paragraph "36": At about 10:30 pm Zweifler faxed the arrest paperwork to the KCDA. (Exh. 10, Zweifler Dep. at 36:1-18, 40:4-14).**

9

Defendants' response: Admitted.

30. **Plaintiffs' 56.1 at paragraph "37": Zweifler subsequently spoke with a member of the KCDA about the arrests where he provided additional details, all for the purpose of bringing about the plaintiffs' criminal prosecutions. (Exh. 10, Zweifler Dep., at 40:19-42:3).**

    Defendants' response: Disputed. Zweifler testified that he spoke to the KCDA in order to make sure the KCDA got the paperwork in order to prosecute the arrested individuals.

31. **Plaintiffs' 56.1 at paragraph "38": On June 24, 2018, Zweifler signed the criminal complaint filed against Thompson under penalty of perjury. (Exh. 10, Zweifler Dep., at 54:12-55:24; See Thompson Criminal Court Complaint attached to the Lumer Dec. as Exhibit 13).**

    Defendants' response: Admitted.

32. **Plaintiffs' 56.1 at paragraph "39": In the criminal complaint filed against Thompson the KCDA charged him with loitering for the purpose of gambling, promoting gambling, and attempting to tamper with evidence. (Exh. 13, Thompson Criminal Court Complaint).**

    Defendants' response: Disputed. . The cited Criminal Court Complaint charges plaintiff with Attempted Tampering with Physical Evidence (PL 110/215.40(2)), Promoting Gambling in the Second Degree (PL 225.05), and Loitering (PL 240.35(2)).

33. **Plaintiffs' 56.1 at paragraph "40": The only factual predicate for the attempted tampering evidence charge was the allegation that Thompson was seen throwing the dice into a car that then drove away. (Exh. 13, Thompson Criminal Court Complaint).**

    Defendants' response: Disputed to the extent that that the information cited is the "only factual predicate", but admit that the cited document states that Thompson was seen throwing "the dice into a parked vehicle with drove away from the location."

C.  **The Dice and the Car**

34. **Plaintiffs' 56.1 at paragraph "41": No dice were ever recovered in connection with this arrest. (Exh. 9, Gillis Dep., at 54:4-24; Exh. 10, Zweifler Dep., 66:20-67:2; Exh. 12, Complaint Report).**

Defendants' response: Admitted.

35. **Plaintiffs' 56.1 at paragraph "42": Zweifler swore in the criminal complaint that Kosek told him that Kosek saw Thompson throw the dice into a parked car that then drove away. (Exh. 13, Thompson Criminal Court Complaint).**

Defendants' response: Disputed. The cited Criminal Court Complaint indicates that Zweifler was informed by Kosek that plaintiff interfered with the investigation and attempted to prevent Zweifler from recovering the dice by throwing the dice into a vehicle.

36. **Plaintiffs' 56.1 at paragraph "43": Zweifler's sworn claim in the criminal complaint about Kosek telling him that Kosek had seen Thompson throw the dice was contradicted by Kosek, who has sworn in his deposition that Zweifler told him that Zweifler saw Thompson throw the dice into a parked car that then drove away. (Exh. 8, Kosek Dep., at 65:25-67:10).**

Defendants' response: Disputed. Defendants submit that this statement is improper and should be stricken as it is not a statement of fact, but rather an argument regarding "contradictions" plaintiffs argue exist. Accordingly, Defendants dispute plaintiffs' argument. Notwithstanding, the record cited by plaintiffs do not support this statement. .

37. **Plaintiffs' 56.1 at paragraph "44": Zweifler's sworn claim in the criminal complaint about Kosek telling him that Kosek had seen Thompson throw the dice was contradicted by Zweifler himself, when he testified at his deposition that he saw Thompson throw the dice into a parked car that then drove away. (Exh. 10, Zweifler Dep., at 22:5-25:24).**

Defendants' response: Disputed. Defendants submit that this statement is improper and should be stricken as it is not a statement of fact, but rather an argument regarding "contradictions" plaintiffs argue exist. Accordingly, Defendants dispute plaintiffs' argument. Notwithstanding, the record cited by plaintiffs do not support this statement.

38. **Plaintiffs' 56.1 at paragraph "45": Surveillance video footage recovered from a camera across the street from the scene of the arrest shows portions of the arrest and related activities in the upper left hand corner of the screen (See Surveillance Video attached to the Lumer Dec., as Exhibit 14).**

<blockquote>Defendants' response: Disputed. All relevant activities to this case occur in the upper-right corner of the surveillance video.</blockquote>

39. **Plaintiffs' 56.1 at paragraph "46": The surveillance video reflects that, at about the 1:32:00 mark, Thompson approaches a parked car in front of the vehicle where the remaining plaintiffs are being held, opens the driver's side front door of that vehicle, and is partially inside the car for about 17-18 seconds. (Exh. 14, Surveillance Video, at 1:32:03-22).**

    Defendants' response: Disputed. It is unclear what is occurring in the cited video and the cited evidence does not support this statement.

40. **Plaintiffs' 56.1 at paragraph "47": Thompson does not throw anything towards or into the car or otherwise make any sort of gesture or motion that suggests he is throwing any sort of object. (Exh. 14, Surveillance Video, at 1:32:00-26).**

    Defendants' response: Disputed. It is unclear what is occurring in the cited video and the cited evidence does not support this statement

41. **Plaintiffs' 56.1 at paragraph "48": Thompson had gone into the car to retrieve Murray's wallet at Murray's request because it had his identification in it, and thus the video footage showing Thompson inside the area of the driver's side front seat captured Thompson searching for Murray's wallet. (Exh. 1, Thompson Dep., at 81:6- 87:2).**

    Defendants' response: Disputed. Defendants submit that this statement is improper and should be stricken as it is not a statement of fact, but rather an argument about what Thompson and Murray were doing. Accordingly, Defendants dispute plaintiffs' argument. Notwithstanding, it is unclear what is occurring in the cited video and the cited evidence does not support this statement

42. **Plaintiffs' 56.1 at paragraph "49": Thompson is taken into custody shortly after emerging from the parked car. (Exh. 10, Zweifler Dep., at 29:13-30:17).**

    Defendants' response: Admitted.

43. **Plaintiffs' 56.1 at paragraph "50": Zweifler swore that he told his fellow officers at the scene of the arrest thathe had seen Thompson throw the dice into a parked car. (Exh. 10, Zweifler Dep., at 27:12-20, 30:14-17).**

    Defendants' response: Disputed. The cited evidence does not support this statement.

44. **Plaintiffs' 56.1 at paragraph "51": Shortly after Thompson exited the vehicle, a police officer opened the same front driver's side door of the car and, for about 33 seconds, searched the same area of the car. (Exh. 14, Surveillance Video, at 1:34:45-1:35:18).**

    Defendants' response: Admitted.

45. **Plaintiffs' 56.1 at paragraph "52": Just prior to leaving scene, Zweifler, Gillis and Zorrilla searched the area for the dice without success, and then entered their vehicle and left the scene. (Exh. 9, Gillis Dep., at 53:11-54:24, 77:19-24; Zweifler BWC footage [file number 2 of 2] attached to the Lumer Dec. as Exhibit 15 at the 4:45-6:10 mark; Zorrilla BWC footage attached to the Lumer Dec. as Exhibit 16 at the 11:00-13:50 mark).**

    Defendants' response: Admitted.

46. **Plaintiffs' 56.1 at paragraph "53": Zweifler swore in the criminal complaint that the car into which he claims that either he or Kosek had seen Thompson throw the dice had driven away. (Exh. 13, Thompson Criminal Court Complaint).**

    Defendants' response: Disputed. The cited Criminal Court Complaint indicates that Zweifler was informed by Kosek.

47. **Plaintiffs' 56.1 at paragraph "54": Zweifler admits that the car was not driven away, and surveillance video reflects that the car was not driven away. (Exhibit 10, Zweifler Dep., at 65:16-66:11).**

    Defendants' response: Admitted in part, Zweifler admits to having made mistakes in plaintiffs' arrest paperwork. Ex. 10 (Zweifler Dep.) at 65:15-66:5.(this is the testimony)

E. **Murray's Criminal Summons**

48. **Plaintiffs' 56.1 at paragraph "55": Zweifler was directed by a supervisor to issue a criminal summons to Charles Murray. (Exh. 10, Zweifler Dep., at 46:12-19).**

    Defendants' response: Admitted.

49. **Plaintiffs' 56.1 at paragraph "56": Zweifler understands that a criminal summons is a legal document and that Zweifler was executing it under penalty of perjury. (Exh. 10, Zweifler Dep., at 47:11-24).**

Defendants' response: Defendants submit that this statement is improper and should be stricken

13

as it is not a statement of fact, but rather an argument regarding "understanding" of legal concepts. Accordingly, Defendants dispute plaintiffs' argument.

50. **Plaintiffs' 56.1 at paragraph "57": Zweifler issued Murray a handwritten summons charging Murray with loitering for the purpose of gambling in violation of N.Y. Penal Law §240.35(2). (Exh. 10, Zweifler Dep., at 46:20-47:6; Criminal Summons issued to Charles Murray attached to the Lumer Dec. as Exhibit 17).**

    Defendants' response: Admitted.

51. **Plaintiffs' 56.1 at paragraph "58": Zweifler stated in the summons that the factual predicate for the issuance of the summons was:**

    > At T/P/O the undersigned observed the deft, along with 3 others, standing on a public sidewalk engaging in Dice in which money was exchanged Depending on the outcome of the the Dice. (Exh. 17, Criminal Summons (grammatical errors in original)).

    Defendants' response: Admitted.

52. **Plaintiffs' 56.1 at paragraph "59": Zweifler admits that he did not see anyone playing with dice or gambling and that his claim in Murray's summons that he saw Murray gambling with dice was false. (Exh. 10, Zweifler Dep., at 51:22-52:20, 53:19-54:11).**

    Defendants' response: Disputed. See Defendants' Reply 56.1 at ¶54. Plaintiff cites to inadmissible evidence and distorts Zweifler's testimony. Further, defendants timely and correctly objected to plaintiff counsel's questions which impermissibly called for a legal conclusion.

F. **Thompson's Prosecution**

53. **Plaintiffs' 56.1 at paragraph "60": Thompson was required to appear in court multiple times while the prosecution proceeded. (Exh. 1, Thompson Dep., at 59:20-21, 61:7-15; Court Record of Action, annexed to the Lumer Dec. as Exhibit 18).**

    Defendants' response: Disputed. Plaintiff Thompson was "Not too sure" about how many times he appeared in court and the phrase "multiple times" is ambiguous

54. **Plaintiffs' 56.1 at paragraph "61": On or about September 27, 2018, the charges against Thompson were dismissed on speedy trial grounds. (Exh. 18, Court Record).**

        <u>Defendants' response: Admitted.</u>

Dated:      New York, New York
                January 26, 2022

                              GEORGIA M. PESTANA
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              THE CITY OF NEW, RYAN GILLIS, JOSEPH KOSEK, THOMAS BAY, WILLIAM ZWEIFLER, and ANTONIO ZORILLA.
                              New York, New York 10007
                              Tel:(212) 356-2354


                          By: <u>*Richard Bahrenburg*</u>/S/
                              Richard Bahrenburg
                              SeniorCounsel
                              Special Federal Litigation Division